The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GEORGE M. KRAEMER, et al.,<br><br>   Plaintiffs,<br>v.<br><br>LONE STAR INDUSTRIES, *et al*.,<br><br>   Defendants. | Civil Action No. 2:21-CV-673-BJR<br><br>**ORDER GRANTING MOTION TO REMAND** |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiffs George and Patricia Kraemer's Motion to Remand. Dkt. No. 15. Defendant Lone Star Industries ("Lone Star") opposes the motion. Dkt. No. 20. Having reviewed the motion and opposition thereto, the record of the case, and the relevant legal authorities, the Court will grant the motion. The reasoning for the Court's decision follows.

## II.   BACKGROUND

George Kraemer is a 79-year-old retired science teacher who lives in Wenatchee, Washington with his wife of over 50 years, Patricia Kraemer. In August 2020, Mr. Kraemer was diagnosed with mesothelioma, a cancer of the pleura for which asbestos is a known cause. Mr. Kraemer alleges that he was exposed to asbestos and asbestos-containing products manufactured

and sold by Lone Star[1] that was used at Todd Shipyard ("Todd") and Puget Sound Bridge and Dredging ("Lockheed") in Seattle, Washington where his father worked as an insulator between 1942 and 1945. He also alleges that he was exposed to asbestos through his own workplace. On October 1, 2020, Plaintiffs instituted this action in King County Superior Court against Lone Star and other defendants, alleging claims based on the theories of product liability, negligence, premises liability, conspiracy, unsafe workplace, strict liability for abnormally dangerous, and other applicable theories of liability. Plaintiffs were granted an accelerated trail date of September 27, 2021 based on Mr. Kraemer's terminal illness.

Lone Star removed the matter to this federal district court on May 21, 2021 under the federal officer removal statute, 28 U.S.C. §§ 1442(a)(1) and 1446. Dkt. No. 1. With the instant motion, Plaintiffs seek to remand the case, arguing that Lone Star has failed to meet its burden to establish that it is entitled to removal under the federal officer removal statute.

### III.   DISCUSSION

The federal officer removal statute authorizes removal of a civil action brought against any person "acting under" an officer of the United States "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). To invoke the statute, a defendant must show that (1) it is a "person" within the meaning of the statute, (2) a causal nexus exists between the plaintiff's claims and the actions the defendant took pursuant to a federal officer's direction, and (3) it has a "colorable" federal defense to the plaintiff's claim. *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014). A defendant seeking to remove an action under § 1442(1)(a) "may not offer mere

---

[1] Lone Star is the successor to Pioneer Sand & Gravel ("Pioneer") which was founded in 1902. For ease of reference, this Court refers to Lone Star and Pioneer interchangeably.

legal conclusions; it must allege the underlying facts supporting each of the requirements for removal jurisdiction. *Id*. at 1122.

A plaintiff may challenge the defendant's invocation § 1442(a)(1) through a "facial" attack or a "factual" attack. *Id*. at 1121. A "facial" attack accepts the truth of the defendant's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id*. (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A "factual" attack challenges the truth of the defendant's factual allegations, usually by introducing evidence outside the pleadings. *Id*. (citing *Safe Air for Everyone*, 373 F.3d at 1039). A court resolves a "facial" attack as it would a motion to dismiss—accepting the defendant's allegations a true and drawing all reasonable inferences in defendant's favor. *Id*. A court resolves a "factual" attack "under the same evidentiary standard that governs in the summary judgment context" and the opposing party must present competent evidence as it would on summary judgment. *Id*.

Here, Lone Star alleges that the federal officer removal statute is applicable to this case because Lone Star is (1) a "person" within the meaning of the statute, (2) all asbestos-containing products it supplied to Todd and Lockheed during the relevant timeframe were used almost "exclusively on U.S. Navy ships" and supplied "pursuant to U.S. Navy contracts and specifications under the control and supervision of officers of the U.S. Navy", and (3) any recovery by Plaintiffs is barred by the judicially-recognized military contractor defense. Dkt. No. 1 at 3-5.

Plaintiffs raise both a "facial" and a "factual" challenge to Lone Star's invocation of § 1441(a)(1). They argue that Lone Star's jurisdictional allegations cannot survive a facial attack because Lone Star's removal petition fails to sufficiently allege facts—that if taken as true— would establish that Lone Star has a "colorable" federal defense to Plaintiffs' claims. Specifically,

Plaintiffs point out that Lone Star does not allege that the asbestos-containing insulation it sold to Todd and Lockheed was "military equipment", a requirement under the military contractor defense. Plaintiffs further allege that Lone Star's jurisdiction allegations cannot survive a factual attack because it has failed to prove by a preponderance of the evidence that each of the requirements for federal officer removal jurisdiction as been met.

### 1. Plaintiffs' Facial Attack on Lone Star's Jurisdictional Allegations

As stated above, Lone Star claims that removal is appropriate pursuant to the federal officer removal statute because the military contractor defense provides it with a colorable federal defense to Plaintiffs' claims. The Supreme Court of the United States outlined the contours of the military contractor defense in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), stating that: "[l]iability for design defects in military equipment cannot be imposed [on military contractors], pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. The *Boyle* Court justified the imposition of the military contractor defense as a barrier to traditional state tort actions on the grounds that "the selections of the appropriate design for military equipment to be used by our Armed Forces is a discretional function for which the United States cannot be sued directly under the Federal Tort Claims Act because the selection process involves "judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness." *Boyle*, at 511. The *Boyle* Court reasoned that "permitting 'second guessing' of these judgments … through state tort suits against contractors would produce the same effect sought to be avoided" by the exemptions to the Federal Tort

Claims Act. *Id*. Therefore, the *Boyle* Court concluded, "[l]iability for design defects in military equipment cannot be imposed [] pursuant to state law," when the elements of the military contractor defense have been established. *Id*. at 512.

Noting that the *Boyle* Court "repeatedly described the military contractor defense in terms limiting it to those who supply military equipment to the Government", the Ninth Circuit has held that the military contractor defense "immuniz[es] contractors only with respect to the *military equipment* they produce for the United States[.]" *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 811 (9th Cir. 1992) (emphasis added). The Ninth Circuit further clarified "that the fact that a company supplies goods to the military does not, in and of itself, immunize it from liability for the injuries caused by those goods. Where the goods ordered by the military are those readily available, in substantially similar form, to commercial users, the military contractor defense does not apply." *Id*. Applying this rational, the Ninth Circuit affirmed the district court's rejection of the military contractor defense to asbestos manufacturers, stating:

> We agree with the district court that the asbestos insulation alleged to have caused the plaintiffs' injuries here does not represent military equipment entitling its manufactures to the protections of the military contactor defense. The plaintiffs introduced significant evidence below that the insulation sold by Fibreboard and Owens-Illinois to the Navy was the very same insulation which those companies marketed to commercial buyers. This insulation was not manufactured with the special needs of the military in mind. To the contrary, the military constituted a relatively insignificant purchaser of products that were primarily designed for applications by private industry.

*Id*. at 812.

Relying on the foregoing, Plaintiffs argue that Lone Star cannot "invoke the government contractor defense without evidence that its product constituted 'military equipment'". Dkt. No. 15 at 14. According to Plaintiffs, while it is indisputable that Lone Star sold asbestos-containing products to shipyards during World War II, "Lone Star has not alleged that the insulation [it] sold

was 'military equipment' or that it was not readily available in substantially similar form to non-military customers." *Id*.

Lone Star fails to address this argument in its remarkably sparse opposition to the motion to remand. Instead, it focuses on the fact that the Navy allegedly issued "highly detailed specifications governing [the] types of insulation products to be used on Navy ships." Dkt. No. 20 at 3. This argument misses the point. It is not enough that the Navy issued detailed specifications with respect to which insulation should be used on its ships; rather, the salient fact for the purposes of the military contractors defense is whether the "insulation was manufactured with the special needs of the military in mind"; in other words, whether the insulation was "developed on the basis of involved judgments made by the military" because it is those judgment calls that render the Federal Tort Claims Act inapplicable. *In re Hawaii Federal Asbestos Cases*, 960 F.2d at 810-811. Lone Star does not allege that its insulation was manufactured with the special needs of the military in mind; thus, its insulation does not constitute "military equipment" for purposes of the military contractor defense. Accordingly, Lone Star has failed to rebuff Plaintiffs' facial attack to its jurisdictional allegations.

    2.    **Plaintiffs' Factual Attack on Lone Star's Jurisdictional Allegations**

Plaintiffs also raise a factual challenge to Lone Star's jurisdictional allegations, introducing evidence that Lone Star marketed and sold the very same insulation used on the Navy ships to non-military commercial entities. Plaintiffs provided the Court with copies of advertisements in the local telephone directories dated 1943 and 1946 as well as product identification disclosure lists from prior asbestos litigation that suggest Lone Star insulation was used at a paper mills, refineries, hospitals, breweries, the University of Washington, and Boeing. In the face of this evidence, it is Lone Star's obligation to counter with its own "competent

evidence" to prove "by a preponderance of the evidence" that federal jurisdiction exists. *Leite*, 749 F.3d 1122. Lone Star wholly fails to meet its burden; indeed, Lone Star fails to even acknowledge Plaintiffs' evidence. Accordingly, Lone Star has failed to rebuff Plaintiffs' factual attack to its jurisdictional allegations.

### 3. Plaintiffs' Request for an Award of Fees and Costs

Plaintiffs argue that an award of attorney's fees and costs is warranted in this case because Lone Star removed this matter without a sound evidentiary basis to assert federal jurisdiction. This Court agrees. Evidently Lone Star does as well as it did not bother to oppose the request. Ordinarily the Court would instruct Plaintiffs to furnish an affidavit setting forth the reasonable attorney's fees and costs associated with this motion, but given the expediency of this matter, the Court will arrive at its own conclusion of what constitutes a reasonable amount.

## IV. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Plaintiffs' motion to remand this matter to King County Superior Court. In addition, the Court awards attorney's fees and costs to Plaintiffs in the amount of $1,000.00.

Dated this 22nd day of July 2021.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge